940 F.2d 275
 Jon M. WOODS and Connie Blakley, Plaintiffs-Appellants,
v.
CITY OF MICHIGAN CITY, INDIANA, Michael M. Bigda, Officer
Hudson, Four Other Unknown Officers, individually
and County of LaPorte, Indiana,
Defendants-Appellees.
 No. 90-1582.
 United States Court of Appeals,
Seventh Circuit.
 Argued Dec. 3, 1990.
Decided Aug. 15, 1991.
 
 Hugo E. Martz (argued), Valparaiso, Ind., for plaintiffs-appellants.
 Charles E. Hervas (argued), James G. Sotos, James R. Schirott, Michael W. Condon, Phillip A. Luetkehans, Betty J. Gloss, Schirott & Associates, Itasca, Ill., Steven C. Snyder, Michigan City, Ind., Shaw R. Friedman, Bokland, Yandt & Friedman, and Martin W. Kus, Newby, Lewis, Kaminski & Jones, LaPorte, Ind., for defendants-appellees.
 Before BAUER, Chief Judge, MANION, Circuit Judge, and WILL, Senior District Judge.*
 MANION, Circuit Judge.
 
 
 1
 Plaintiff Jon M. Woods brought suit under 42 U.S.C. Sec. 1983 against the City, the County, and various police officers claiming unlawful detention after his arrest for reckless driving. Before releasing Woods the City police required him to post bond in accordance with a bond schedule issued by a state Superior Court judge. State law, however, explicitly eliminated the requirement that bond be posted for release in reckless driving offenses, conditioning such release instead on the defendant's signing a promise to appear in court. Woods claimed that his detention and need to post bond in violation of state law resulted in a denial of his liberty interest under the Fourteenth Amendment. The district court concluded that the state judge's bond directive, although contrary to state law, was not a policy of the City or County. He concluded that Woods did not state a legally cognizable claim and granted summary judgment in favor of the defendants. The district court also ruled that the defendant police officers were protected by qualified immunity, and consequently dismissed Woods' suit against them. Woods appeals, and we affirm.
 
 I.
 
 2
 On May 25, 1986, at or around 10:30 p.m., defendant Officer Bigda of the Michigan City police department, while on his way home noticed an automobile "squealing" its tires in traffic within the city limits of Michigan City, located within LaPorte County, Indiana. Officer Bigda observed the car travel about one block and make an abrupt lane change in front of another car, causing that car to slow down suddenly. When Officer Bigda saw the car "squeal" from another light, he called on his police radio for assistance. Shortly, Officer Hudson and four other unknown policemen pulled the offending car over.
 
 
 3
 The police officers stopped the car and learned that the driver was Jon Woods (who was seventeen at the time) and that the car was owned by Woods' mother Connie Blakley. Bigda informed Woods that he had been following him and was arresting him for reckless driving, a misdemeanor offense. Bigda told Woods the arrest was based on the squealing tires, and for almost causing an accident with another car because of the unsafe lane change. The policemen searched Woods' car at the scene but found no incriminating evidence. Friends accompanying Woods were permitted to drive the car back to Woods' mother's house. Woods was taken to the Michigan City Jail and charged with reckless driving (Ind.Code Sec. 9-4-1-56.1). Pursuant to a bond schedule issued by LaPorte Superior Court Judge Arthur Keppen, Woods was detained in the Michigan City Jail overnight (for about eight hours) until his mother procured his release with a $250 bond.
 
 
 4
 As a result of his detention, Woods filed a lawsuit in federal court against Michigan City, LaPorte County, and several police officers alleging an unconstitutional deprivation of his liberty. Woods claims that the police wrongfully detained him pursuant to the bond schedule issued by Superior Court Judge Keppen because Indiana Code Sec. 9-4-1-131 requires the release of every Indiana resident arrested for a traffic misdemeanor offense upon a signed promise to appear in court at a later date.[1] Woods argued that the state law permitting his release upon signature vested him with a state-created liberty interest which may not be arbitrarily or without good reason denied him under the U.S. Constitution.
 
 
 5
 The district court entered summary judgment against Woods, stating in part that Woods could not show under Indiana law that the LaPorte Superior Court judge was a "policymaker" with ultimate policymaking authority necessary to impose liability on the municipal defendants for activity resulting in due process violations. The district court also granted qualified immunity to the defendant police officers, holding that the police's enforcement of the judicially pronounced bond schedule was not a violation of the "clearly established" rights of individuals within their localities.
 
 II.
 
 6
 Our standard for evaluating the grant of a summary judgment motion is well established. "In examining the district court's grant of summary judgment, our duty is to review de novo the record and the controlling law." PPG Indus. v. Russell, 887 F.2d 820, 823 (7th Cir.1989). Typically our task is to "decide whether the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to the judgment as a matter of law." Wolf v. Larson, 897 F.2d 1409, 1411 (7th Cir.1990). However, when the parties do not dispute the factual basis of a motion for summary judgment, as in this case, the reviewing court's only inquiry is whether judgment should have been issued by the district court as a matter of law. Town of South Whitley v. Cincinnati Insurance, 921 F.2d 104 (7th Cir.1990).
 
 III.
 
 7
 Woods argues that Michigan City and LaPorte County are liable under 42 U.S.C. Sec. 1983[2] due to the directive of Judge Keppen making reckless driving a bondable offense. He argues that the directive contravenes Indiana law, Ind.Code Sec. 9-4-1-131 giving Indiana residents an inviolable liberty interest protected by the U.S. Constitution. Woods further argues that Judge Keppen, as a judicial officer, is a senior policymaking official sufficient to subject the City and County to liability for constitutional deprivations suffered from the enforcement of the illegal bond schedule.
 
 
 8
 The standards establishing municipal liability under Sec. 1983 are set out in Monell v. Dept. of Social Services of the City of New York, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), where the Supreme Court decided that a municipality can be found liable under Sec. 1983 only where the municipality itself causes the constitutional violation at issue. Id. at 694-95, 98 S.Ct. at 2037-38. "It is only when the 'execution of [the] government's policy or custom ... inflicts the injury' that the municipality may be held liable under Sec. 1983." Springfield, Mass. v. Kibbe, 480 U.S. 257, 267, 107 S.Ct. 1114, 1119, 94 L.Ed.2d 293 (1987) (quoting Monell, supra, 436 U.S. at 694, 98 S.Ct. at 2037). "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." Monell, 436 U.S. at 691, 98 S.Ct. at 2036 (emphasis added).
 
 
 9
 The "official policy" requirement was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible ... [R]ecovery from a municipality is limited to acts that are, properly speaking, acts "of the municipality"--that is, acts which the municipality has officially sanctioned or ordered.
 
 
 10
 Pembaur v. City of Cincinnati, 475 U.S. 469, 479-480, 106 S.Ct. 1292, 1298-1299, 89 L.Ed.2d 452 (1986).
 
 
 11
 Thus, the official acts of a municipality include those of governmental officials "whose acts or edicts may fairly be said to represent official policy." Monell, supra, 436 U.S. at 694, 98 S.Ct. at 2037. When the execution of such a policy or custom results in the deprivation of citizens' rights and privileges, the municipality may be subject to liability under Sec. 1983. Municipal liability under Sec. 1983 "attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." Pembaur, supra, 475 U.S. at 481, 106 S.Ct. at 1299. Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, "and of course, whether an official had final policymaking authority is a question of state law." Id. at 483, 106 S.Ct. at 1300. The Supreme Court in Pembaur concluded:
 
 
 12
 [w]e hold that municipal liability under Sec. 1983 attaches where--and only where--a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question. See [Oklahoma City v.] Tuttle, [471 U.S. 808, at 823, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985) ] (" 'policy' generally implies a course of action chosen from among various alternatives").
 
 
 13
 Id., 475 U.S. at 483-484, 106 S.Ct. at 1300-1301. With these standards in mind we must look to the submitted facts and determine whether, as a matter of law, a LaPorte Superior Court judge is a final policymaking authority for the City of Michigan City or LaPorte County.
 
 
 14
 The parties agree that Judge Keppen, as a LaPorte Superior Court judge, issued a bond schedule to the law enforcement officers within LaPorte County requiring bond for those arrested for reckless driving.[3] This requires that those arrested be held until the bond is paid. It is also undisputed that this directive conflicts with Ind.Code Sec. 9-4-1-131 which requires a defendant's release after signing a promise to appear in court at a future date. Thus, the parties agree that Ind.Code Sec. 9-4-1-131 vests in certain persons, including Woods, a liberty interest entitled to protection under the due process clause. Because Woods was detained pending bond payment pursuant to Judge Keppen's directive, he was deprived of his constitutionally protected liberty interest.[4] 4]
 
 
 15
 City and county liability to Woods under Sec. 1983 depends upon whether Judge Keppen was a policymaker with final policymaking authority for those municipalities under state law. The identification of a policymaking official is not a question of federal law and is not a question of fact in the usual sense. "Whether an official had final policymaking authority is a question of state law." City of St. Louis v. Praprotnik, 485 U.S. 112, 123, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988) (citing Pembaur, 475 U.S. at 483, 106 S.Ct. at 1300). State law "will always direct a court to some official or body that has the responsibility for making law or setting policy in a given area of a local government's business." Praprotnik, 485 U.S. at 125, 108 S.Ct. at 924-25.
 
 
 16
 Judge Arthur Keppen, author of the offending bond directive, is a judge of the LaPorte Superior Court. Under Indiana law, a judge of a court of criminal jurisdiction is the official with final authority for fixing bail. Ind.Code 35-33-8-4(a). Indiana law reveals that judges of Indiana's circuit, superior and county courts are judicial officers of the State judicial system: "they are not county officials." Pruitt v. Kimbrough, 536 F.Supp. 764, 766 (N.D.Ind.), aff'd 705 F.2d 462 (7th Cir.1982). County courts in Indiana are exclusively units of the judicial branch of the state's constitutional system. Id. Also see Parsons v. Bourff, 739 F.Supp. 1266 (S.D.Ind.1989), and State ex rel. McClure v. Marion Superior Court, 239 Ind. 472, 158 N.E.2d 264 (1959).
 
 
 17
 Reckless driving is a violation of state law. State courts, such as LaPorte Superior Court, have jurisdiction over such violations. Since Superior Court judges in Indiana are considered to be officials of the state, Woods' claim that Judge Keppen is an official of the city or county, or that his bond schedule is an "act that" Michigan City or LaPorte County have "officially sanctioned or ordered" is unfounded. Pembaur, supra, 475 U.S. at 480, 106 S.Ct. at 1298. Pembaur requires that "municipal liability under Sec. 1983 attaches where, and only where, a deliberate choice to follow a course of action is made ... by the official ... responsible for establishing final policy...." Id. at 483-484, 106 S.Ct. at 1300-1301. No municipal liability attaches in this case because the judge under Indiana law is not such an official vis a vis the city and county. The city and county cannot be held liable under Sec. 1983 unless Woods proved the existence of an unconstitutional municipal policy initiated by a final policymaker for the municipalities. Woods, by naming Judge Keppen as the source of the constitutional deprivation, detaches the local governments from the unconstitutional policy. See Praprotnik, 485 U.S. at 128, 108 S.Ct. at 926. The district court's summary judgment decision that (a) a superior court judge is not a city or county official, and (b) his offending bond schedule was not a "policy" of those localities was proper. Therefore, the City and County are not liable under Sec. 1983 to Woods.
 
 
 18
 After entry of summary judgment in favor of Michigan City, LaPorte County, and the other defendants, Woods filed a motion to amend or alter final judgment. In his motion, Woods tried to advance another ground for Michigan City's Sec. 1983 liability. Woods argued that deposition testimony and certain party admissions establish that the enforcement of the constitutionally deficient bond schedule was a "custom, practice or usage" which, under Monell, can be a basis for municipal Sec. 1983 liability even though the "custom, practice or usage" is not formally approved or authorized by express municipal policy or policymakers. Monell, 436 U.S. at 690-91, 98 S.Ct. at 2035-36.[5] The district court found, in part, that the "custom and usage" argument had not been presented as an independent ground for liability in the pleadings preceding summary judgment. In denying Woods' motion to amend, the court stated:
 
 
 19
 In particular, the plaintiffs now argue that their theory of municipal liability did not rest on Judge Keppen's position as a policymaker for the City of Michigan City, but rested as well upon the theory that the City had its own custom or practice concerning release on bond for persons arrested for reckless driving. The court has reviewed the references in the plaintiffs' March 17, 1988 memorandum in opposition to summary judgment and concludes that reference to what the City does was only by way of illustration of the plaintiffs' basic premise that Judge Keppen was a policymaker. Plaintiffs' Memorandum in Opposition to Summary Judgment, at 15-16 ("An illustration of the fact that Judge Keppen is of a sufficiently high level to set the policy of the Michigan City Police Department ..."). The court considered and rejected the "policymaker" argument, which was the only argument raised in opposition to the summary judgment motion.[6]
 
 
 20
 A motion to amend or alter a final judgment under Fed.R.Civ.P. 59(e) "cannot be used to raise arguments which could, and should have been made" before the trial court entered the final judgment. See Simon v. United States, 891 F.2d 1154, 1159 (5th Cir.1990); Federal Deposit Ins. Corp. v. Meyer, 781 F.2d 1260, 1268 (7th Cir.1986). A district court's decision to grant or deny a Rule 59(e) motion shall not be disturbed upon appeal, unless the district court abused its discretion. Lockhart v. Sullivan, 925 F.2d 214, 219 (7th Cir.1991). The district court in this case did not abuse its discretion. In the pleadings below, plaintiffs' sole argument was that Judge Keppen was a policymaker with final authority to establish policy for Michigan City and LaPorte County. Woods' "custom and usage" argument was not presentable in his motion to amend and was properly rejected by the district court. Consequently, that argument cannot be considered in this appeal.
 
 
 21
 Finally, Woods argues that the defendant police officers are liable to him under Sec. 1983 because they should have known that detaining him until bond was posted violated his clearly established statutory and constitutional rights. The district court granted qualified immunity to the police officers on the basis that Woods' right to be free from having to post bond was not "clearly established" at the time of his arrest.
 
 
 22
 The Supreme Court stated that "whether an official may prevail in his qualified immunity defense depends upon the 'objective reasonableness of his conduct as measured by reference to clearly established law.' " Davis v. Scherer, 468 U.S. 183, 191, 104 S.Ct. 3012, 3017, 82 L.Ed.2d 139 (1984) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). This court has stated that "qualified immunity is designed to shield from civil liability 'all but the plainly incompetent or those who knowingly violate the law.' " Hughes v. Meyer, 880 F.2d 967, 971 (7th Cir.1989) (quoting from Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986)).
 
 
 23
 Indeed, it is undisputed that the police officers acted pursuant to a judicially promulgated bond schedule which required a cash bond in order for Woods to gain his freedom, in violation of Indiana law. However, we agree with the district court that the officers could not have known that their detention of Woods violated his rights in light of (a) their duty to observe the bond schedule issued by a state judge, and (b) the court's finding that the officers were unaware of the existence of Sec. 9-4-1-131. Even if they were aware of the state law, it was not unreasonable for them to follow the clear directive of the state court judge. The officers, thus, did not knowingly violate Woods' clearly established rights. Qualified immunity was properly granted to the police officers.
 
 IV.
 
 24
 In his concurring opinion, Judge Will raises a valid and interesting question: whether Ind.Code Sec. 9-4-1-131(a) actually creates a constitutionally protected liberty interest which enables Woods to state a cause of action under 42 U.S.C. Sec. 1983. In a prison setting the Supreme Court has held that "a state creates a liberty interest by placing substantive limitations on official discretion." Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 109 S.Ct. 1904, 1909-10, 104 L.Ed.2d 506 (1989). Most of the cases analyzing the existence of a liberty interest based on state law and determining what due process is due to protect that interest, have involved prisoners and prison regulations. The existence of a liberty interest has turned on whether the regulations at issue contain "explicitly mandatory language," in connection with the establishment of "specific substantive predicates" to govern official decisionmaking. Id. In other words, a state creates a liberty interest "by mandating the outcome to be reached upon a finding that the relevant criteria have been met." Id.
 
 
 25
 "Arguably" the statute creates a liberty interest. See Abdul-Wadood v. Duckworth, 860 F.2d 280, 283 n. 3 (7th Cir.1989). On its face, Ind.Code Sec. 9-4-1-131(a) seems to satisfy the Supreme Court's announced requirements, although Ind.Code Sec. 9-4-1-131(a) does not relate to the prison context. Under the statute, the arrestee must be released when the perceived "substantive predicates" are satisfied: that is, arrestee is charged with a misdemeanor traffic offense, and he is not taken immediately to a judge. (See fn. 1 supra.) The statutory "outcome" (release from custody) is expressed in "explicitly mandatory language." Id. The statute's protections were not realized where Woods was held by the police pursuant to Judge Keppen's bond schedule when by law he should have been released. Under this analysis one could argue that Ind.Code Sec. 9-4-1-131(a) implicates a liberty interest and that Woods pleads a prima facie case under Sec. 1983. On the other hand, as Judge Will notes, Woods' detention may limit him to making a claim under the Fourth Amendment where the reasonableness of his "seizure" must be examined, or a claim of cruel and unusual punishment under the Eight Amendment. Viewed from this perspective, the facts fall short of supporting a constitutional violation.
 
 
 26
 Nevertheless, both parties concede that Ind.Code Sec. 9-4-1-131(a) implicates a liberty interest to which due process applies. (Appellees' brief p. 6 states, "[t]he defendants do not challenge plaintiff's assertion that Indiana Code Sec. 9-4-1-131(a) implicates a liberty interest protected under the Due Process Clause of the Fourteenth Amendment. (See, Appellant's brief, pp. 6-11.) Rather, the defendants disagree with plaintiff's contention that [he was] deprived ... of his constitutional rights on procedural or substantive due process grounds."). The district court accepted this view but was relieved from holding on the due process question since Woods sued the wrong parties. Woods v. City of Michigan City, 685 F.Supp. 1457, 1462, 1467 (N.D.Ind.1988). Since the court accepted the view of the parties in its analysis, it is not deemed a holding that a liberty interest was implicated or violated. United States v. Daniels, 902 F.2d 1238, 1241 (7th Cir.1990).
 
 
 27
 We are satisfied that Woods has pleaded a non-frivolous constitutional claim which is sufficient to invoke the district court's federal question jurisdiction. Jackson Transit Authority v. Local Division 1285, 457 U.S. 15, 21 fn. 6, 102 S.Ct. 2202, 2206 fn. 6, 72 L.Ed.2d 639 (1982); see also Ricketts v. Midwest National Bank, 874 F.2d 1177, 1180 (7th Cir.1989). Because this case is disposable on nonconstitutional grounds, it is not necessary to announce a holding on the constitutional issue of whether a liberty interest was actually violated in this case. Taylor v. Peabody Coal Co., 892 F.2d 503, 508 (7th Cir.1989). Furthermore, the issue was inadequately briefed by the parties as the defendant simply conceded the constitutional issue without debate. While our own analysis assumes a liberty interest for the sake of argument, we need not determine whether there is one because we find, as did the district court, that Woods has sued the wrong defendants in the first place.
 
 
 28
 For the foregoing reasons the decision of the district court in all respects is
 
 
 29
 AFFIRMED.
 
 
 30
 WILL, Senior District Judge, concurring.
 
 
 31
 I join the majority's opinion and write separately only to differ on one point--whether Woods has made out a claim for deprivation of liberty without due process of law. The opinion states that he has. See supra at 278-79 ("Because Woods was detained ... he was deprived of his constitutionally protected liberty interest."). I believe that he was not so deprived. Consequently, whereas the majority affirms Judge Miller's grant of summary judgment on grounds that there are no defendants here subject to suit, I would affirm even if there were available defendants--on the ground that Woods has no cause of action under 42 U.S.C. Sec. 1983.
 
 
 32
 I agree with the conclusion that there can be no municipal liability on these facts. Under Indiana law Judge Keppen is not a municipal official. But cf. City of St. Louis v. Praprotnik, 485 U.S. 112, 143, 108 S.Ct. 915, 934, 99 L.Ed.2d 107 (1988) (Brennan, J., concurring) (noting that "in some cases statutory law will ... fail to disclose where ... authority ultimately rests" and also that "real and apparent authority may diverge"). Judge Keppen is not an official over whom either LaPorte County or Michigan City exercise any control. He is not an official for whose actions the county or city may reasonably be held responsible.
 
 
 33
 I also agree with the majority's conclusion that the officers who arrested Woods and held him over night are immune from suit. They acted on a court-issued bond schedule which they had a right to rely on. Cf. Michigan v. DeFillippo, 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979) ("Society would be ill-served if its police officers took it upon themselves to determine which laws are and which laws are not constitutionally entitled to enforcement."); Anela v. Wildwood, 790 F.2d 1063, 1071 (3d Cir.1986) (Becker, J., dissenting). We should not encourage police officers to second guess judges--though that principle has its limits. An officer's reliance will not always be justified and, in particular, won't be justified where a judge or magistrate has acted simply as a rubber stamp for an officer who clearly should have been second guessed or was acting in bad faith. See United States v. Leon, 468 U.S. 897, 914, 104 S.Ct. 3405, 3416, 82 L.Ed.2d 677 (1984).
 
 
 34
 I differ with the majority on only one point--in my belief that, even if there were a defendant Woods could sue, he would still not have a Sec. 1983 cause of action. Holding Woods in jail overnight was a clear violation of state law, for which he may find a remedy under state law in an action for unlawful imprisonment. But Woods has no claim under the federal constitution. As Michigan City points out, Woods has not been deprived of a protected "liberty interest" without due process of law. See brief at 8-9 ("[A] failure to comply with Indiana's 'sign and go' statute fails to implicate any conceivable procedural due process right under the Fourteenth Amendment. The procedural due process components of notice and an opportunity to be heard do not apply to the defendants' failure to let Mr. Woods sign his ticket.... [T]he failure to comply with the statute does not invoke such procedural protections ... [There also was not] the requisite level of culpability to deprive [Woods] of substantive due process.").
 
 
 35
 The due process clause of the fourteenth amendment gives substantive protection for some rights. That is "substantive due process." See for instance Turner v. Safley, 82 U.S. 78, 107 S.Ct. 2254, 2265, 96 L.Ed.2d 64 (1987); Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). But it offers no substantive protection against being temporarily placed in custody after a lawful arrest with probable cause (and Woods does not dispute that there was probable cause)--not even for traffic offenses and other petty misdemeanors. See Robbins v. California, 453 U.S. 420, 450 & n. 11, 101 S.Ct. 2841, 2858 & n. 11, 69 L.Ed.2d 744 (1980) (Stevens, J., dissenting); Fisher v. Washington Metro. Area Transit Authority, 690 F.2d 1133, 1339 n. 6 (4th Cir.1982).
 
 
 36
 The eighth amendment also offers protections. Punishment may not precede conviction; the eighth amendment creates a strong presumption in favor of bail over detention, though not an irrebuttable one, see United States v. Salerno, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987); Schall v. Martin, 467 U.S. 253, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984) (juveniles); Faheem-El v. Klincar, 841 F.2d 712 (7th Cir.1988) (parolees); and we may assume that the fourteenth amendment incorporates the bail clause of the eighth amendment making it applicable to the states and therefore to the defendants in this case. See Baker v. McCollan, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 2694 n. 3, 61 L.Ed.2d 433 (1979); Schilb v. Kuebel, 404 U.S. 357, 365, 92 S.Ct. 479, 484, 30 L.Ed.2d 502 (1971); Faheem-El, supra, 841 F.2d at 718 n. 8. Nothing in the eighth amendment, however, guarantees instant release for misdemeanors or any other offense. Consequently, when Woods was arrested and jailed overnight until his mother arrived to post bail the next morning, he was not denied any substantive rights guaranteed by the federal constitution.
 
 
 37
 Of course, the several states are free to offer protections to their citizens which the federal constitution does not. But when a state promises substantive protections not guaranteed by the federal constitution and backs up that promise in writing--by passing a statute, the way Indiana has, promising that traffic offenders will be released without bail rather than jailed--the promise is its own. And if the state welshes on its promise, by requiring bail when it said it wouldn't, substantive rights may have been denied under state law. But no substantive rights have been denied as a matter of federal law. See Regents of University of Michigan v. Ewing, 474 U.S. 214, 229, 106 S.Ct. 507, 515, 88 L.Ed.2d 523 (1985) (Powell, J., concurring).
 
 
 38
 This brings me to the question of procedural rights. Did the federal constitution, through the due process clause, guarantee Woods a hearing before being detained for bail? Here the answer is somewhat more complicated but still is "No."
 
 
 39
 The Supreme Court has held that, for purposes of the due process clause, "property" and "liberty" may be derivable from sundry sources of state law, independent of any common law or constitutional claim of right.[1] One such source is a state statute or rule with "explicitly mandatory language." Kentucky Department of Corrections v. Thompson, 490 U.S. 454, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989).
 
 
 40
 In Indiana, misdemeanor traffic violators "shall be released from custody ... upon signing a written promise to appear in the proper court" at the proper time. That is explicitly mandatory language; it does not provide for discretion; there are no weasel words. Indiana's statute vests Indiana residents with a right to release without bail in misdemeanor traffic cases, contingent only on their first signing a citation. On that much Woods and the defendants are in agreement.
 
 
 41
 So far so good. But Woods infers next that, having given him a substantive right to sign and go, a "liberty interest," Indiana also owed him at least "rudimentary notice and a hearing," Brief at 11, before depriving him of the right it conferred; and he says the summary deprivation he suffered, being jailed without having been offered a chance to "sign and go" or a prior hearing, constituted a deprivation of a federally protected liberty without procedural safeguards--without due process.
 
 
 42
 Substance and procedure, however, are (as a doctrinal matter anyway) distinct and separate. State law may define substantive rights, but federal law defines the procedures that must accompany them, the process which states must provide. See Cleveland Board of Education v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).
 
 
 43
 Consider three examples.
 
 
 44
 1. Welfare benefits are a matter of statutory entitlement for people eligible to receive them. They are "property." Accordingly, the procedures a state must provide to protect that entitlement are a matter of due process. And due process requires a prior hearing before benefits are cut off. Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). See also Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) (driver's licenses).
 
 
 45
 2. A state civil service statute which provides for employment "during good behavior and efficient service," and discharge only for cause, creates a property right in continued employment. And, in a state with such a statute, the due process clause guarantees civil servants a right to a hearing before being dismissed. Loudermill, supra, 470 U.S. 532, 105 S.Ct. 1487.
 
 
 46
 3. A state which offers prisoners time off for good behavior, and provides by statute that "good-time" credits are to be forfeited only for "serious misconduct," makes good-time credits "liberty." And the due process clause makes them deniable only after written notice and a hearing. Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). See also Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) (a state which makes education a right or an entitlement may not suspend students from school without providing a hearing either before the suspension or "as soon as practicable").
 
 
 47
 In each of the foregoing examples, procedures guaranteed by federal law give a person with an entitlement (or right or interest) created by state law a chance to give his or her side of the story--in a situation where the facts matter (because different facts might produce a different result) and the State might be acting on incorrect information. Thus, federal law guarantees that welfare recipients will have a hearing before their benefits are terminated so that they can challenge the State's determination that they are ineligible and no longer qualify for assistance; "for cause" civil servants are guaranteed a hearing before a discharge so that they can contest whether there is "cause" in fact to fire them; and prisoners with good-time credits forfeitable only for misbehavior are guaranteed a hearing prior to having credits taken away in order to contest whether they have misbehaved. The important point is that in each of these cases state action depends on certain facts having been established and a hearing provides a chance to ascertain or confirm those facts.
 
 
 48
 But not all state action depends on factual predicates. And where state action does not depend on predicate facts, or there are no disputed facts (and no disputes about the application of rules or policies to particular facts), generally no hearing is required. The due process clause does not mandate procedure for its own sake. Due process of law means an opportunity to be heard, sometimes in person, sometimes on paper, sometimes before the fact, Goldberg v. Kelly, supra, (welfare benefits), sometimes after Mathews v. Eldridge, supra, (social security benefits), in cases where there is something to be heard about.
 
 
 49
 In Codd v. Velger, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977), the Supreme Court rejected a police officer's claim that he should have been given a hearing when stigmatizing material was put in his personnel file, material which he alleged was the cause both of his dismissal from his nontenured position on the force and his inability to find similar employment. The Court held that because the officer had made no claim that the information in his file was false and the purpose of a hearing would have been solely to provide him with "an opportunity to clear his name" there was no need for a hearing. No hearing was necessary, for instance, to determine whether the information, if true, warranted his discharge. 429 U.S. at 633, 97 S.Ct. at 887 (Stevens, J., dissenting).
 
 
 50
 In Board of Curators v. Horowitz, 435 U.S. 78, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978), the Court held that the decision to dismiss a student from a state medical school for academic deficiencies, being "more subjective and evaluative" than a disciplinary decision, does not require any form of a hearing, even "[a]ssuming, the existence of a liberty or property interest." 435 U.S. at 84-85, 98 S.Ct. at 952-953. The existence of a substantive right does not necessarily imply a right to a hearing.
 
 
 51
 Thus, Woods had a right, guaranteed by Indiana law, to release without bail. He did not, however, have a federal constitutionally protected right to a hearing before being deprived of that right. Application of Indiana's sign and go statute does not depend on facts. A predeprivation hearing would not have served any useful evidentiary purpose. Compare Fed.R.Civ.P. 56. If there had been a prior hearing, perhaps Woods or his lawyer might have alerted the judge or magistrate (even Judge Keppen) to a legal point, the invalidity of Judge Keppen's bail schedule in light of Indiana's sign and go statute. But Woods was not entitled to a hearing for that purpose. If the rule were otherwise, a prior hearing would routinely be required before any anticipated deprivation of property or liberty, so as to give the person about to be deprived a chance to question whether the correct legal rule was being followed. And that clearly is not the law. Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893.
 
 
 52
 Due process does not guarantee "right" substantive outcomes or correct conclusions of law. It guarantees advance notice of charges and a fair chance to refute them. Woods had notice that he was going to be held until he posted bail, there was no evidence to rebut and, in Laporte County anyway, the application of the law to the facts was clear--reckless driving was a bondable offense as established by a bond schedule entered by a statutorily competent judicial officer.
 
 
 53
 This is but another way of saying that a predeprivation hearing would not have been much of a hedge against Woods' being detained overnight and that, being of dubious probable value, it was not constitutionally required. See Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893.
 
 
 54
 There is one more possibility that due process may have been denied. An argument could be made that setting bail from a master bail bond schedule without a prior hearing is a denial of due process in itself. Ackies v. Purdy, 322 F.Supp. 38, 41 (S.D.Fla.1970) so held. But Ackies goes too far. It is conceivable that due process requires individualized bail hearings in some circumstances. If Woods were arguing that he was entitled to a hearing to fix bail because the $250 listed on Judge Keppen's bond schedule was more than was necessary to assure his appearance in court, then he would have a stronger argument, and possibly a winning one, that he was entitled to a bail hearing. Woods, however, has not objected to the amount of bail, so we are not presented with that question, and he was not entitled to an immediate bail hearing simply as a matter of constitutional principle. Setting bail from a master bond schedule is not unconstitutional per se. Constitutionality would depend on whether the bail amount listed on the schedule is excessive for a particular defendant accused of having committed a particular crime.
 
 
 55
 It is disturbing that Woods was handcuffed, taken to jail, held overnight and made to post bond for squealing his tires and a sloppy lane change. It is still more disturbing that all of this occurred notwithstanding the clear Indiana statute. Nevertheless, detaining Woods overnight and setting his bail without a prior hearing was not a deprivation of liberty without due process of law. He has no claim under 42 U.S.C. Sec. 1983.
 
 
 
 *
 The Honorable Hubert L. Will, Senior Judge for the U.S. District Court for the Northern District of Illinois, is sitting by designation
 
 
 [1]
 Ind.Code Sec. 9-4-1-131 provides:
 Whenever a person who is a resident of this state is arrested for any misdemeanor regulating the use and operation of motor vehicles, and the resident is not immediately taken to court as provided in section 130.1 of this chapter, the person shall be released from custody by the arresting officer upon signing a written promise to appear in the proper court at a time and date indicated on the promise. The resident shall be given a copy of the promise.
 
 
 [2]
 Title 42 U.S.C. Sec. 1983 provides, in relevant part, that:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....
 
 
 [3]
 The bond schedule, in its official form, was not included in the record of this case. However, the parties have a common understanding of the nature and operation of Judge Keppen's bond schedule as demonstrated in the following excerpt from Michigan City Defendant's Response To Request For Admissions:
 
 
 [1]
 When the Plaintiff, JON M. WOODS, was arrested for reckless driving on May 25, 1986, there was a bond schedule in force issued by Judge Arthur Keppen, Judge of the LaPorte County Court, sitting in Michigan City, directed to, among other persons and agencies, the MICHIGAN CITY POLICE DEPARTMENT and its police officers
 ANSWER: Defendant admits the allegations contained in paragraph 1.
 
 
 [2]
 This bond schedule provided, among other things, that persons cited for reckless driving within the jurisdiction of the said court, were required to post a bail bond of TWO HUNDRED FIFTY DOLLARS ($250.00) cash ... and if they did not do so, they were to be held in custody pending the posting of a proper bond or release on such other terms as the court might impose
 ANSWER: Defendant admits the allegations contained in paragraph 2....
 
 
 [4]
 Although it is questionable whether Woods has a valid liberty interest (see Part IV and concurrence, infra ), since we resolve this case on other grounds we need not reach that constitutional question
 
 
 [5]
 Relevant language in Monell reads as follows:
 ... Moreover, although the touchstone of the Sec. 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other Sec. 1983 "person," by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels. As Mr. Justice Harlan, writing for the Court, said in Adickes v. S.H. Kress & Co., 398 U.S. 144, 167-168 [90 S.Ct. 1598, 1613-1614, 26 L.Ed.2d 142] [citations omitted] (1970): "Congress included customs and usages [in Sec. 1983] because of the persistent and widespread discriminatory practices of state officials.... Although not authorized by written law, such practices of state officials could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law."
 Monell, 436 U.S. at 690-91, 98 S.Ct. at 2035-36.
 
 
 [6]
 Judge Robert Miller's unpublished memorandum and order of February 18, 1990, at p. 2
 
 
 [1]
 See, for instance, Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) (mere existence of a parole system does not establish a liberty interest for inmates seeking parole, but "unique structure and language" of state Nebraska parole statute created one) and Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) (although state law did not explicitly authorize the granting of tenure to junior college professors, there might be "an unwritten 'common law,' " in the form of "mutually explicit understandings," which would give rise to "implied" tenure and justify a "legitimate claim of entitlement to continued employment absent 'sufficient cause.' "). But cf. Bishop v. Wood, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976) (showing a reluctance to find rights and entitlements in anything other than explicit provisions of positive law); Jago v. Van Curen, 454 U.S. 14, 17-21, 102 S.Ct. 31, 34-36, 70 L.Ed.2d 13 (1981) ("mutually explicit understandings" may in some circumstances supply the basis for a property interest, but never for a liberty interest)