Debra EGGAR and Roger L. Nuttbrock,
Plaintiffs–Appellants,

v.

CITY OF LIVINGSTON,
Defendant–Appellee.

No. 93–36075.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 5, 1994.

Decided Nov. 21, 1994.

Eula Compton, Missoula, MT, for plaintiffs-appellants.

J. Dennis Moreen and Allen B. Chronister, Chronister, Driscoll & Moreen, Helena, MT, for defendant-appellee.

Before: LAY,* TROTT and T.G. NELSON, Circuit Judges.

LAY, Circuit Judge:

Debra Eggar and Roger L. Nuttbrock appeal the district court's grant of summary judgment in favor of the City of Livingston, Montana ("the City") as well as the court's dismissal of their claims for injunctive and declaratory relief.[1] Eggar and Nuttbrock brought a 42 U.S.C. § 1983 action against the City and Judge Travis, alleging the City had a policy of imprisoning indigent defendants without offering appointed counsel and without securing an effective waiver of the right to counsel. Eggar subsequently moved for class certification, alleging that from January 1989 to February 1992, the City jailed 229 persons who had no legal representation. The motion was denied. In November 1992 the court granted the City's motion for summary judgment on the damage claim, concluding the plaintiffs failed, as a matter of law, to demonstrate Judge Travis was a city policy maker or that he followed a city policy of denying counsel to indigents. We affirm the judgment of the district court.

## BACKGROUND

On February 22, 1991, Eggar appeared before Judge Travis for a second offense of driving under the influence of alcohol, a crime carrying a mandatory prison sentence in Montana. Eggar alleges Judge Travis did not advise her of her right to an appointed attorney if she could not afford counsel. She did attempt to retain counsel, but could not pay the attorney's fee and appeared in court alone. Eggar claims she never waived her right to counsel. She pled guilty and was fined $500 and sentenced to six months in jail. She alleges she was released after thirty days when her sister retained counsel for her, although the court never modified her sentence.

The City had previously charged Eggar with numerous other offenses. She alleges she was never advised of her right to counsel for any of these charges, although she sometimes did sign a form purporting to waive her right to counsel. Judge Travis occasionally jailed Eggar for these offenses, but more often fined her. Eggar contends Judge Travis' policy was to advise defendants of their rights in groups, never explaining under what circumstances they had a right to appointed counsel, and never explaining the

---

\* Honorable Donald P. Lay, Senior Circuit Judge for the Eighth Circuit, sitting by designation.

**1.** Although Judge Neil M. Travis was originally joined as a defendant, he was dismissed as a party defendant to the action. He is not a party to the appeal.

meaning of the waiver form he asked them to sign.

Nuttbrock appeared before Judge Travis on four misdemeanor charges in December 1989. After spending several weeks in jail because he could not make bail, Nuttbrock agreed to plead guilty. He alleges he was required to sign the City's waiver of counsel form as a condition of release. The court fined Nuttbrock and a short time later jailed him for nonpayment. On signing a payment schedule, Nuttbrock was again released. He failed to make payments as required and was rearrested and jailed. Judge Travis sentenced him to eighty-nine days. Nuttbrock contends that, although he was indigent, Judge Travis never advised him of his right to an attorney.

*MUNICIPAL LIABILITY*

Plaintiffs appeal the district court's summary judgment ruling and the dismissal of their other claims. They argue the City is subject to liability as a municipality under § 1983 because their injuries resulted from its policy of denying indigents appointed counsel and because Judge Travis acted as a policy maker for the City.

The Supreme Court in *City of St. Louis v. Praprotnik* summarized the principles governing liability of a municipality under § 1983 observing:

First, ... municipalities may be held liable under § 1983 only for acts for which the municipality itself is actually responsible, "that is, acts which the municipality has officially sanctioned or ordered." Second, only those municipal officials who have "final policymaking authority" may by their actions subject the government to § 1983 liability. Third, whether a particular official has "final policymaking authority" is a question of *state law*. Fourth, the challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in *that area* of the City's business.

485 U.S. 112, 123, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988) (quoting Justice Brennan's plurality opinion in *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 482–83 & n. 12, 106 S.Ct. 1292, 1298–99, 1300 & n. 12, 89 L.Ed.2d 452 (1986)) (citations omitted) (emphasis original).

■ The district court found the plaintiffs failed to establish the City's liability. The crucial factor is whether under state law the acts in question were performed under the municipality's or the state's authority. *See Owens v. Fulton County*, 877 F.2d 947, 952 (11th Cir.1989). Judge Travis' acts and decisions advising indigents of their rights are not administrative or ministerial acts based on the judge's authority as a local official. However, the judge's treatment of indigent defendants was an exercise of judicial discretion drawn from the authority of the state,[2] appealable to higher state courts,[3] and closely analogous to actions found to be outside the scope of municipal liability.[4]

■ The district court determined Judge Travis was performing a state judicial func-

---

**2.** Although city judges are defined as officers of Montana cities, Mont.Code Ann. § 7–4–4101 to –4102 (1993), city court jurisdiction and powers derive from the state statutes and they are included in the hierarchy of the state judicial system. Mont.Code Ann. §§ 3–11–101 to –303 (1993). Mont.Code Ann. § 3–1–101 states: "The following are courts of justice of this state: ... (4) the municipal courts; (5) the justice's courts; (6) the city courts...."

**3.** *See* Mont.Code Ann. §§ 3–5–303, 3–6–110, 46–17–311 (1993). Thus, a city judge's decisions are neither final nor exclusively local.

**4.** *See, e.g., Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir.1992) (finding no municipal liability for local judge's sending plaintiff to jail without assistance of counsel because this act was judicial, not administrative); *Woods v. City of Michigan City*,

940 F.2d 275, 279 (7th Cir.1991) (holding the city and county not liable for the local judge's bond directive because the judge was acting as an officer of the Indiana judicial system); *Owens*, 877 F.2d at 952 (holding that the county is not liable for its district attorney's acts because the attorney's authority over prosecutorial decisions is vested by state law); *Carbalan v. Vaughn*, 760 F.2d 662, 665 (5th Cir.) (stating that a municipality which had no policy regarding a municipal judge's judicial duties cannot be liable even if municipal judge erred in refusing to accept two motor club cards in lieu of bail), *cert. denied*, 474 U.S. 1007, 106 S.Ct. 529, 88 L.Ed.2d 461 (1985); *Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir.1980) (ultimately concluding that a county judge's issuance of disclosure demands is a state law function).

tion and not acting as a final decision maker for the City when deciding how or whether to advise the plaintiffs of their rights, and whether to appoint counsel. Relying on *Johnson v. Moore,*[5] the court concluded that "a municipal judge acting in his or her judicial capacity to enforce state law does not act as a municipal official or lawmaker" for purposes of § 1983 liability. 958 F.2d 92, 94 (5th Cir.1992). We find Montana statutory law dictates this same conclusion.

The district court held Eggar and Nuttbrock failed to establish the City had a policy of denying indigent defendants their rights. The court determined the City's small indigent defense budget was not *per se* unconstitutional. Even assuming Judge Travis violated the constitutional rights of indigent defendants, there was no relationship between these violations and any policy or custom of the City. Most importantly, the court emphasized that because the City had no control over Judge Travis in his judicial capacity, it had no power to authorize or ratify his conduct and thus could not be responsible for his acts.

Plaintiffs contend Judge Travis was a city policy maker because the actions of municipal judges may constitute official municipal policy if the judge holds absolute sway over particular tasks. In *Familias Unidas v. Briscoe,* 619 F.2d 391, 404 (5th Cir.1980), the court found that under Texas law, county judges have duties such as presiding over county commissioners and preparing the county budget which can constitute official county policy making. A city may be liable for a judge's acts if those acts are in accordance with city policy. *Williams v. Butler,* 863 F.2d 1398, 1402–03 (8th Cir.1988) (en banc) (holding a city liable for the unconstitutional firing of two clerks by a municipal judge when it was clear the City had delegated to him final administrative authority over employment matters), *cert. denied,* 492 U.S. 906, 109 S.Ct. 3215, 106 L.Ed.2d 565 (1989).

Plaintiffs attempt to distinguish *Johnson* by claiming Judge Travis was performing the mere "administrative duty" of reciting defendants' rights, which did not involve judicial discretion. Further, it is argued Judge Travis operated outside of his state judicial capacity by consistently violating Montana law regarding the right to counsel.

■ Plaintiffs also argue they presented sufficient evidence to raise a jury question on whether the City had an unwritten policy of refusing to provide counsel to indigents. They point to the City's budget of only $1,000 a year for indigent defense, the jailing of 229 persons without counsel, and Judge Travis' failure to advise indigent defendants of their rights. Plaintiffs argue the working relationship between the City and Judge Travis suggests the Judge actively maintained this policy. They contend this situation is analogous to *Crane v. Texas,* 759 F.2d 412 (5th Cir.), *cert. denied,* 474 U.S. 1020, 106 S.Ct. 570, 88 L.Ed.2d 555 (1985), where the court held a county liable for the ongoing practice of the county attorney in obtaining warrants without going before a magistrate, even though the county had no legal authority over the attorney.

■ These arguments are not compelling. Officials can act on behalf of more than one government entity. *Owens v. Fulton County,* 877 F.2d 947, 952 (11th Cir.1989). That Judge Travis allegedly performed his duty to advise indigents of their rights in a way that makes a mockery of those rights does not make that duty administrative. The Judge's failure to follow state law or federal constitutional law does not transform his "cattle-call" method of counseling into municipal policymaking. As state law makes clear, the Judge's obligation to address the rights of defendants arises from his membership in the state judiciary. It is lamentable, but irrelevant, that he failed miserably to meet this obligation under both state and federal standards: he simply is not a municipal decision maker in this context.[6] *See also City of*

5. In *Johnson,* a municipal court judge sentenced the plaintiff to jail without the benefit of counsel and without a knowing and intelligent waiver of the right to counsel. 958 F.2d at 93. The Fifth Circuit held that, even assuming plaintiff's rights were violated, the municipality was not liable because the judge's acts and omissions were performed within his judicial capacity. *Id.* at 94.

6. *See, e.g., Woods,* 940 F.2d at 279 (finding the municipalities not liable while clearly suggesting the judge violated the law); *Bigford v. Taylor,*

*St. Louis v. Praprotnik,* 485 U.S. 112, 126, 108 S.Ct. 915, 925–26, 99 L.Ed.2d 107 (1988) ("[A] federal court would not be justified in assuming that municipal policymaking authority lies somewhere other than where the applicable law purports to put it.")

■ A similar analysis defeats plaintiffs' theory of liability based on policy and custom. Because Judge Travis was functioning as a state judicial officer, his acts and omissions were not part of a city policy or custom.[7] A municipality cannot be liable for judicial conduct it lacks the power to require, control, or remedy, even if that conduct parallels or appears entangled with the desires of the municipality.[8] The record does not contain sufficient evidence of any conspiracy between Judge Travis and City officials to deprive indigents of their rights to make the existence of that conspiracy a genuine issue of material fact. The district court's grant of summary judgment should therefore be affirmed.

*DECLARATORY AND INJUNCTIVE RE-LIEF*

■ The court held plaintiffs failed to show they were in real and immediate danger of sustaining direct injury from the City's conduct and so lacked standing to pursue their claims for declaratory judgment and an injunction. The court found the possibility of future harm too conjectural; the claims would force the court to speculate whether the plaintiffs would again be arrested in the City while still indigent, brought before the City Court, denied the right to counsel, plead guilty, and be convicted.[9] The court also believed considerations of comity weighed against enjoining the operating procedures of state courts.

Plaintiffs contend the court erred because the history of constitutional violations make the possibility of future violations sufficiently certain. Plaintiffs rely heavily on *Thomas v. Counts of Los Angeles,* 978 F.2d 504, 507–08 (9th Cir.1992), where this court found minority residents of a small neighborhood alleged a real and immediate threat from the local police by presenting evidence of numerous, ongoing instances of unlawful searches and violent acts. Like the plaintiffs in *Thomas,* both Eggar and Nuttbrock, together with many other indigents, have repeatedly been jailed without counsel. Further, Eggar is currently adversely affected by the City's unconstitutional conduct because she remains under a six-month sentence and her driver's license is presently revoked.

In response, the City relies upon *Nelson v. King County,* 895 F.2d 1248, 1252 (9th Cir. 1990), which states the Supreme Court and Ninth Circuit have repeatedly found a lack of standing "where the litigant's claim relies upon a chain of speculative contingencies, particularly a chain that includes the violation of an unchallenged law." In *O'Shea* and *Lyons,* the Court also found a lack of standing to seek an injunction where the future harm was hypothetical.[10] The City dismisses

---

834 F.2d 1213, 1222 (5th Cir.) (stating that a deliberate or mistaken departure from controlling state law does not represent municipal policy) (citing *Pembaur v. Cincinnati,* 475 U.S. 469, 486, 106 S.Ct. 1292, 1301–02, 89 L.Ed.2d 452 (1986) (White, J., concurring)), *cert. denied,* 488 U.S. 851, 109 S.Ct. 135, 102 L.Ed.2d 108 (1988).

7. This context is distinguishable from *Crane,* which involved a county attorney establishing unconstitutional county capias procedures. 759 F.2d at 430. The *Crane* court recognized the attorney, although acting under a state statutory scheme, was performing a county administrative function. *Id.* This is unlike the present case, which involves a judge acting within his capacity as a state judicial officer. Also, the judge's decisions are appealable within the state judicial system, while the county procedures set by the attorney in *Crane* were final and purely local. *See id.*

8. *See, e.g., Johnson,* 958 F.2d at 94; *Woods,* 940 F.2d at 279 (stating that the plaintiff, by pointing to the judge's acts "as the source of the constitutional deprivation, detaches the local governments from the unconstitutional policy.").

9. The magistrate cited a number of Supreme Court precedents stating that standing requires a real and immediate threat of injury, not merely a conjectural one. *See City of Los Angeles v. Lyons,* 461 U.S. 95, 102, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983); *O'Shea v. Littleton,* 414 U.S. 488, 493, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1973); *Golden v. Zwickler,* 394 U.S. 103, 109–10, 89 S.Ct. 956, 960–61, 22 L.Ed.2d 113 (1969).

10. In *O'Shea,* the Court held that no equitable relief was available to a class of plaintiffs alleging that local judges were systematically deterring protest activities through discriminatory practices. 414 U.S. 488, 94 S.Ct. 669. The Court

Eggar's claim to be presently adversely affected because it was not raised below. However, even if this claim had been properly raised, it basically overlooks that the City has no control over the state judicial functions of Judge Travis. Thus declaratory or injunctive relief against the City cannot achieve the desired goal of having Judge Travis cease his alleged unconstitutional conduct.

A "chain of speculative contingencies" rules out standing in this case. *Nelson,* 895 F.2d at 1252. Whether Eggar or Nuttbrock will commit future crimes in the City, be indigent, plead guilty, and be sentenced to jail is speculative. *See O'Shea,* 414 U.S. at 497, 94 S.Ct. at 676–77. *Thomas* is entirely distinguishable. There, a class consisting of minority residents of a small neighborhood complained of an ongoing police practice of randomly detaining and mistreating them. 978 F.2d at 508. Members of the class were also subject to retaliatory attacks as a result of their lawsuit. *Id.* at 507. Plaintiffs here fail to establish this kind of real and imminent threat. We also agree with the City that Eggar's argument about present adverse effects is not before us because there is no indication this issue was raised below.

■ Although our rulings afford the plaintiffs no immediate comfort, we note they have means to protect themselves should a City judge at some future time attempt to trample on their constitutional rights. They can file a complaint with the state body charged with overseeing judicial conduct, and they can appeal their convictions to a higher court. Furthermore, a state judge does not enjoy judicial immunity from unconstitutional behavior when the facts are sufficient to grant a party declaratory or injunctive relief against a judge. *See Pulliam v. Allen,* 466 U.S. 522, 541–42, 104 S.Ct. 1970, 1980–81, 80 L.Ed.2d 565 (1984). We recognize that un-

counseled indigents are unlikely to be aware of these more efficacious alternatives, but as much as we deplore the situation plaintiffs set forth, we cannot hold the City liable under the circumstances alleged, and we do not find standing for the claims for a declaratory judgment or injunctive relief.

We affirm the district court's grant of summary judgment to the City and its dismissal of plaintiffs' equitable claims.

AFFIRMED.

reasoned that the plaintiffs had failed to demonstrate a sufficient threat of harm; the threat here was not "sufficiently real and immediate to show an existing controversy simply because [plaintiffs] anticipate violating lawful criminal statutes and being tried for their offenses." *Id.* at 496, 94 S.Ct. at 676. In *Lyons,* the Supreme Court held that a plaintiff failed to allege a sufficient case or controversy when he sought injunctive relief to prevent Los Angeles police officers from using

deadly force such as strangleholds in routine traffic stops. 461 U.S. at 105, 103 S.Ct. at 1666–67. Although a number of similar incidents had occurred in the past, the Court refused to accept the plaintiff's argument that he was likely enough to violate traffic laws and subsequently be choked or otherwise physically mistreated to create a realistic threat of future harm. *Id.* at 108–10, 103 S.Ct. at 1668–69.