978 F.2d 504
 Darren THOMAS, et al., Plaintiffs-Appellees,
v.
COUNTY OF LOS ANGELES; City of Lynwood; Los Angeles County
Sheriff's Department; Sheriff Sherman Block;
Captain Bert J. Cueva; Defendants-Appellants.
Darren THOMAS, et al., Plaintiffs-Appellees,
v.
COUNTY OF LOS ANGELES, Defendant,
and
Paul Archambault; Katherine Brown-Voyer; Tony Campbell;
James Corrigan; Robert Delgadillo; Kelly Gill; Douglas
Gillies; Ruben Gracias; Kevin Kiff; J. Leslie; Jason
Mann; Guy Mato; John Mossotti; Ed Nordskog; Michael
Pippin; Dan Raimo; Thomas Rosas; J. Sheehy; Elizabeth
Smith; Greg Thompson; Michael Voge; Defendants-Appellants.
 Nos. 91-56047, 91-56048.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 4, 1991.
Decided Oct. 21, 1992.
As Amended Feb. 12, 1993.
 
 Steven D. Manning and Robert S. Wolfe, Douglas J. Collodel, and Richard H. Nakamura, Jr., Morris, Polich & Purdy, Los Angeles, Cal., for defendants-appellants.
 Robert A. Olson, Greines, Martin, Stein & Richland, Beverly Hills, Cal., for defendants-appellants.
 Patrick O. Patterson, NAACP Legal Defense and Educational Fund, Inc., Los Angeles, Cal., for plaintiffs-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before: SCHROEDER and KOZINSKI, Circuit Judges, and ORRICK,* District Judge.
 SCHROEDER, Circuit Judge:
 
 
 1
 The plaintiffs, predominately black and hispanic residents of the City of Lynwood, California, brought this section 1983 class action alleging that deputy sheriffs at the Lynwood station of the Los Angeles County Sheriff's Department were mistreating minority citizens. The complaint, filed against the County of Los Angeles, the City of Lynwood, the Los Angeles County Sheriff's Department, supervisory personnel within the Sheriff's Department, and individual Sheriff's deputies, includes allegations of unlawful detentions and searches, beatings, shootings, terrorist activities, and destruction of property. Specifically, the plaintiffs charge that deputy sheriffs in Lynwood use excessive force in detaining minority citizens and employ unlawful procedures in searching residences occupied by minorities. This appeal, filed by the defendants, challenges the preliminary injunction issued by the district court in an effort to bring to an end the incidents of police misconduct.
 
 
 2
 The injunction issued by the district court ordered the entire Los Angeles Sheriff's Department to do the following:
 
 
 3
 1. Follow the Department's own stated policies and guidelines regarding the use of force and procedures for conducting searches; and
 
 
 4
 2. Submit to the Court in camera and under seal, copies of reports alleging the use of excessive force that are in the possession of the Department on the first of every month.
 
 
 5
 Pursuant to the defendants' request for emergency appellate relief, this court stayed the injunction pending appeal.
 
 
 6
 We reverse the district court's injunction because its broad geographic and substantive scope is not supported by the record before us, and because the district court entered the injunction and subsequent findings of fact without resolving some serious factual disputes concerning the specific incidents of misconduct alleged. We hold that the plaintiffs do have standing to pursue this action and we remand for further proceedings.
 
 Proceedings Below
 
 7
 The misconduct as described by the plaintiffs is both malicious and pervasive. Affidavits collected during the early stages of litigation charge that black and hispanic men have been repeatedly arrested without cause and severely beaten at the Lynwood station, the County jail, and the "Operations Safe Streets" trailer. Guns, flashlights, fists, clubs, boots, a brick wall, and an electric Taser gun were just a few of the weapons allegedly used to injure individual plaintiffs. Many of the victims required medical treatment after being "apprehended" by Lynwood deputies, and some were hospitalized. Firearms were purportedly used to terrorize suspects. Affidavits recount instances where deputies placed the muzzle of a firearm in a suspect's ear, mouth or behind his head, and threatened to pull the trigger, or actually fired the gun without discharging a bullet. The plaintiffs also cite ten incidents where deputies allegedly illegally forced entry into residences, searched and ransacked the premises, and then left without arresting anyone. Many of the incidents described by the plaintiffs involved racial slurs and obscene language directed at the victim of the beating or search.
 
 
 8
 The plaintiffs filed volumes of declarations and affidavits in support of their allegations and defendants responded in kind. There was no evidentiary hearing. The record is described in appellees' brief as follows:
 
 
 9
 In support of their preliminary injunction motion, plaintiffs filed over 200 pages of documentary evidence, including 58 declarations detailing the deputies' misconduct and 33 color photographs of injuries and property damage suffered by the victims. Plaintiffs also relied on documents they had previously filed in opposition to defendants' pending motions, including certified copies of the declarations of 11 deputies and news reports concerning the existence and activities of the "Vikings," a white-supremacist gang of deputies operating within the Lynwood substation. Defendants responded with more than 1,200 pages of declarations and other documents in an effort to refute plaintiffs' claims. In reply, plaintiffs filed 25 additional declarations and other documents.
 
 
 10
 The plaintiffs sought from the district court a preliminary injunction to prevent further violent acts and unlawful searches. Before argument, the plaintiffs presented the court with a proposed order which anticipated enjoining only department personnel acting within "the jurisdiction of the Lynwood station." The defendants represented to the court, however, that the Department's deputy assignment policy would make such an order impossible and, if issued, would "interject confusion into law enforcement operations." In response, the district court granted the plaintiffs' motion for a preliminary injunction, but struck the geographic limitation contained in the proposed order. The preliminary injunction was entered on September 23, 1991.
 
 
 11
 Although two weeks later the district court filed written findings of fact and conclusions of law in support of the preliminary injunction order, they were entered without an evidentiary hearing and did not resolve any specific conflicting factual allegations.[1] The findings of fact and conclusions of law are reprinted in their entirety in the Appendix.
 
 Standing
 
 12
 As a threshold matter, appellants challenge plaintiffs' standing to pursue this action in which they seek to represent a class of residents and visitors to the Lynwood area who have been or may be mistreated by Lynwood Sheriff's deputies on account of their race, color, national origin, age, or economic class. Appellants rely principally on City of Los Angeles v. Lyons, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983).
 
 
 13
 The Article III "case or controversy" requirement restricts federal jurisdiction to those cases where the plaintiffs can maintain that their injury or the threat of future injury by the defendants is "both 'real and immediate,' not 'conjectural or hypothetical.' " Lyons, 461 U.S. at 102, 103 S.Ct. at 1665 (citations omitted). Plaintiffs allege that they are suffering ongoing irreparable injury as a result of the Lynwood deputies' terrorist-type tactics. Further, they contend that there is a direct link between the department policy makers and the injuries suffered by the plaintiffs.
 
 
 14
 The majority of the incidents alleged by the plaintiffs are said to have occurred within a six by seven block area within the jurisdiction of the Lynwood station. Seventy-five plaintiffs allege that they were victims of police misconduct, many within this small section of the City. A number of the class members are alleged to have been repeatedly subject to police brutality and harassment. This is significant as the "possibility of recurring injury ceases to be speculative when actual repeated incidents are documented." Nicacio v. United States I.N.S., 797 F.2d 700, 702 (9th Cir.1985).
 
 
 15
 Also significant is the fact that members of the plaintiff class have been subjected to retaliatory attacks in response to the filing of this action. In O'Shea v. Littleton, the Supreme Court dismissed a complaint alleging discrimination in sentencing, holding that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse affects." 414 U.S. 488, 495-96, 94 S.Ct. 669, 676, 38 L.Ed.2d 674 (1974). Repeated instances of violence and retaliatory confrontations are "continuing present adverse affects" and cause the threatened injury to be "sufficiently real and immediate to show an existing controversy." Id. at 496, 94 S.Ct. at 676.
 
 
 16
 Lyons does counsel caution with respect to federal intervention in state law enforcement matters. See LaDuke v. Nelson, 762 F.2d 1318, 1323 (9th Cir.1985) (citing Lyons, 461 U.S. at 112, 103 S.Ct. at 1670). Lyons too involved a federal court's order enjoining allegedly unconstitutional conduct of city law enforcement officials. The Court explained that to prevail on the standing question, Lyons needed to "credibly allege that he faced a realistic threat from the future application of the City's policy." Id. at 107 n. 7, 103 S.Ct. at 1667 n. 7. The Court held that Lyons, one citizen in a very large city, could not credibly allege that he would again be detained by the police and again be the victim of a police chokehold. In contrast, the record before this court indicates that numerous instances of police misconduct have occurred in a small six by seven block area, some minority residents of the area have been mistreated by deputies more than once, and many victims purportedly did nothing to warrant detention or apprehension prior to the mistreatment. Moreover, plaintiffs have alleged that the misconduct is purposefully aimed at minorities and that such misconduct was condoned and tacitly authorized by department policy makers. We conclude that the plaintiffs have alleged a "real and immediate threat of injury" and consequently have presented a justiciable controversy. Lyons, 461 U.S. at 103, 103 S.Ct. at 1666.
 
 Merits of the Injunction
 
 17
 The primary question raised by this appeal is whether the equitable relief granted by the district court was permissible given the evidence offered by the parties. For two reasons we conclude that the injunction, as issued, must be vacated. First, the district court's finding that the abuses in question were the product of departmental policy is not supported by this record containing conflicting declarations unresolved by an evidentiary hearing or specific factual findings. Second, the injunction was too sweeping. Our holding, however, is limited to the record before us and does not preclude the grant of narrower preliminary or permanent injunctive relief on the basis of a more fully developed record.
 
 
 18
 I. Showing departmental policy: the need to resolve factual disputes.
 
 
 19
 "Our review of a motion for preliminary injunction is 'very limited.' " International Molders' & Allied Workers' Local Union No. 164 v. Nelson, 799 F.2d 547, 550 (9th Cir.1986). However, we may overturn a preliminary injunction if the record does not support the district court's conclusion that the plaintiff is likely to succeed on the merits. Id. at 551; see also Caribbean Marine Services Co. v. Baldrige, 844 F.2d 668, 674-75 (9th Cir.1988). When the district court imposes a preliminary injunction on a state agency, a strong factual record is necessary; our review of the injunction must be more rigorous when we review an injunction against a state as opposed to a federal agency, since the Supreme Court requires a showing of an intentional and pervasive pattern of misconduct in order to enjoin a state agency. Rizzo v. Goode, 423 U.S. 362, 375, 96 S.Ct. 598, 606, 46 L.Ed.2d 561 (1976).
 
 
 20
 A state law enforcement agency may be enjoined from committing constitutional violations where there is proof that officers within the agency have engaged in a persistent pattern of misconduct. Allee v. Medrano, 416 U.S. 802, 815-16, 94 S.Ct. 2191, 2200-01, 40 L.Ed.2d 566 (1974); Hague v. Committee for Industrial Organization, 307 U.S. 496, 517, 59 S.Ct. 954, 964, 83 L.Ed. 1423 (1939). In Allee, the Supreme Court upheld a permanent injunction restraining further unconstitutional conduct by various Texas state law enforcement officials who had unlawfully threatened, detained, confined, and physically assaulted union leaders engaged in organizing efforts. Id. 416 U.S. at 804-05, 815, 94 S.Ct. at 2195, 2200. In affirming the district court's injunction, the Supreme Court found that the constitutional violations "were not a series of isolated incidents but a prevailing pattern" of police misconduct. Id. at 809, 94 S.Ct. at 2197.
 
 
 21
 Two years after Allee, the Supreme Court again had reason to examine a federal court's equitable power to enjoin a state law enforcement agency. In Rizzo v. Goode, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), the Supreme Court reaffirmed the factual showing required under Allee--a pervasive pattern of police misconduct--but further defined that standard to include only that conduct "which flowed from an intentional, concerted, and indeed conspiratorial effort to deprive [the victims] of their [constitutional] rights." Id. 423 U.S. at 375, 96 S.Ct. at 606.
 
 
 22
 In Rizzo, as in this case, equitable relief was granted by the district court in an effort to halt instances of police brutality directed at minority citizens. The injunction issued by the district court ordered police officials to submit for approval a comprehensive program for dealing with civilian complaints alleging police misconduct. Id. at 365, 96 S.Ct. at 601-02. The Supreme Court held that nineteen constitutional violations in a year's time, by only a small percentage of the police, did not warrant injunctive relief. Id. at 367-369, 375, 96 S.Ct. at 602-03, 606. In articulating how the plaintiffs had failed in their proof, the Court explained that to succeed the plaintiffs needed to show that the police misconduct flowed from a policy, plan, or a pervasive pattern. Further, this pattern, plan or policy had to be causally linked to the defendants named in the action. The Court placed considerable emphasis on the fact that the officers who actually participated in the alleged incidents of misconduct were not named as defendants in the action. Id. at 375, 96 S.Ct. at 606.
 
 
 23
 Unlike Rizzo, the plaintiffs in this case did name as defendants twenty-one individual sheriff's deputies who were purportedly responsible for the misconduct. Supervisory personnel were also named defendants. The plaintiffs argue that the challenged conduct is causally linked to the Los Angeles Sheriff's Department policies, citing the large number of incidents, the racial animus motivating the violence, the Department's vigorous campaign against minority-race gangs, and the purported existence of a gang of white Sheriff deputies known as the "Vikings." Specific findings of a persistent pattern of misconduct supported by a fully defined record can support broad injunctive relief. See, e.g., Orantes-Hernandez v. Thornburgh, 919 F.2d 549 (9th Cir.1990). But there are no similar specific findings here to support the district court's general conclusion that there is "a direct link between departmental policy makers, who tacitly authorize deputies' unconstitutional behavior, and the injuries suffered by the defendant."
 
 
 24
 The parties to this action submitted diametrically opposing declarations and counter-declarations disputing the frequency and seriousness of police misconduct. Before issuing its preliminary injunction, the district court did not conduct evidentiary proceedings to resolve any of the disputed matters. We are mindful that plaintiffs' eventual burden in obtaining a permanent injunction against a state law enforcement agency is to establish more than repeated incidents of misconduct. See Rizzo, 423 U.S. at 374-375, 96 S.Ct. at 605-606. The record in this case does not yet contain a sufficient basis on which to evaluate the likelihood of the plaintiffs' succeeding on the merits in establishing, not merely misconduct, but a pervasive pattern of misconduct reflecting departmental policy.
 
 
 25
 II. The breadth of the injunction.
 
 
 26
 The district court's order directed all Los Angeles County Sheriff's Department employees to follow "the Department's own stated policies and guidelines regarding the use of force and procedures for conducting searches." The plaintiffs presented no evidence supporting application of the injunction in areas other than the jurisdiction of the Lynwood station. The work assignment policy of the Los Angeles County Sheriff's Department, upon which defendants based their objection to any injunction being entered, does not justify application of this injunction to all Sheriff's Department employees working in the Los Angeles metropolitan area. The injunction plaintiffs initially proposed would have bound only Department personnel acting "within the jurisdiction of the Lynwood station." Neither the record nor the plaintiffs' allegations support an injunction against the entire Sheriff's Department without geographic circumscription.
 
 
 27
 The district court's injunction also directs compliance, under penalty of contempt, with all department policies and guidelines for conducting searches and for the use of force. It does not define what the policies are, or how they can be identified. The order thus fails to specify the act or acts sought to be restrained as required by Fed.R.Civ.P. 65(d).
 
 
 28
 Plaintiffs incorrectly rely on Davis v. City and County of San Francisco, 890 F.2d 1438 (9th Cir.1989) as authority for their position that the injunction can incorporate departmental policies without specific reference. That case does not permit the wholesale incorporation of Department policies and guidelines as an injunctive mandate. The injunction issued in that case incorporated by reference portions of a single general internal order issued by the San Francisco Fire Department requiring that station houses be inspected for racially inflammatory or sexually inflammatory material. The injunction, by way of an incorporated order, specified the act or acts sought to be restrained. It did not incorporate by reference, all SFFD policies and guidelines.
 
 
 29
 Finally, Paragraph two of the district court's injunction directs the Los Angeles County Sheriff's Department to "[s]ubmit to the Court, in camera and under seal, copies of reports alleging the use of excessive force that are in the possession of the Department on the first of every month." The district court is authorized to direct the submission of such reports to ensure compliance with an injunction. Provided it is not "overly burdensome," such oversight can be a proper exercise of the district court's discretion "because it helps ensure compliance with the injunction." Gluth v. Kangas, 951 F.2d 1504, 1511 (9th Cir.1991) (upholding injunction requiring state prison authorities to submit to the district court duplicate reports of denials of prisoner supply requests). Requiring submission of incident reports in camera and under seal is not in and of itself an unduly burdensome way for the district court to monitor the defendants' compliance with an otherwise valid order enjoining future unlawful conduct. See Kerr v. United States Dist. Ct. for N.D. Cal., 426 U.S. 394, 405-06, 96 S.Ct. 2119, 2125-26, 48 L.Ed.2d 725 (1976); Guerra v. Board of Trustees of Cal. State Universities, 567 F.2d 352, 355 (9th Cir.1977) (in camera review, deletion of names, and strict control over copies are a few of the "read[ily] availab[le] alternatives to protect confidentiality"). In this case, however, this portion of the injunction does not yet further compliance with an otherwise valid order and, insofar as it applies to all incidents reported to the Los Angeles County Sheriff's Department, is even broader than the scope of plaintiffs' complaint. The plaintiffs have alleged deputy misconduct only within the jurisdiction of the Lynwood station. Any reporting provision entered by the district court should be tailored to fit within the scope of the litigation and must further an appropriate injunctive remedy.
 
 Conclusion
 
 30
 The preliminary injunction entered by the district court is REVERSED AND THE MATTER REMANDED FOR FURTHER PROCEEDINGS.
 
 APPENDIX
 
 31
 The court's findings of fact and conclusions of law provide as follows:
 
 FINDINGS OF FACT
 
 32
 1. Plaintiffs filed this civil rights action suit under 42 U.S.C. §§ 1983 and 1985 to stop, what they perceived to be, the systematic and unjustified shootings, killings, beatings, terrorism, and destruction of property caused by Los Angeles County deputy sheriffs at the Lynwood sub-station.
 
 
 33
 2. A motion to certify the class has not yet been filed.
 
 
 34
 3. Since the date this case was filed, there have been many confrontations between deputy sheriffs and plaintiffs, in an apparent attempt by the deputies to convince plaintiffs to dismiss this action.
 
 
 35
 4. Several plaintiffs were charged with crimes after they were allegedly brutalized by deputies. These individuals were charged pursuant to an unwritten Sheriffs Department policy of charging a person injured in the course of a routine stop. Because of the unreasonable force used in effectuating their arrests, many of these victims had their criminal charges dropped at arraignment.
 
 
 36
 5. Witnesses who attempted to file misconduct reports regarding some of the brutality incidents were discouraged from doing so by deputies and their superiors.
 
 
 37
 6. Most of the deputies who work in the Lynwood area are permanently assigned to the Lynwood sub-station; however, a significant number of officers, such as reserve officers and members of department-wide bureaus, are not permanently assigned to the Lynwood sub-station, but occasionally work in the Lynwood area.
 
 
 38
 7. The actions of many deputies working in the Lynwood sub-station are motivated by racial hostility; these deputies regularly disregard the civil rights of individuals they have sworn to protect. Many of the incidents which brought about this motion involved a group of Lynwood area deputies who are members of a neo-nazi, white supremacist gang--the Vikings--which exists with the knowledge of departmental policy makers.
 
 
 39
 8. Deputies, who previously worked in the Lynwood sub-station, acknowledge that during the period they were assigned to Lynwood, it was clear that many of the deputies and sergeants in Lynwood were out to intimidate and ridicule Blacks and Hispanics.
 
 
 40
 9. There is a direct link between departmental policy makers, who tacitly authorize deputies' unconstitutional behavior, and the injuries suffered by the plaintiffs.
 
 
 41
 10. As a result of the terrorist-type tactics of deputies working in Lynwood, and the policy makers' tolerance of such tactics, plaintiffs are being irreparably injured--both physically and mentally--and their civil rights are being violated.
 
 
 42
 11. The evidence presented by the plaintiffs is more credible than that presented by the defendants.
 
 
 43
 12. To the extent that any of these findings of fact are deemed to be conclusions of law, they are incorporated as conclusions of law.
 
 CONCLUSIONS OF LAW
 
 44
 1. Plaintiffs have standing to seek injunctive relief because:
 
 
 45
 A. They requested damages as well as injunctive relief ( see Giles v. Ackerman, 746 F.2d 614 (9th Cir.1984), cert. denied, 471 U.S. 1053 (1985));
 
 
 46
 B. They have alleged a persistent pattern of police misconduct in the Lynwood area from which a future threat can be inferred ( see Smith v. City of Fontana, 818 F.2d 1411 (9th Cir.1987)); and
 
 
 47
 C. Their claims for injunctive relief and damages are based on the same operative facts ( see Smith, 818 F.2d at 1423).
 
 
 48
 2. A preliminary injunction should be issued upon a showing of probable success on the merits and the possibility of irreparable harm, or the existence of serious questions on the merits and that the balance of hardships tips in the moving party's favor. Vision Sports, Inc. v. Melville Corp., 888 F.2d 609, 612 (9th Cir.1989).
 
 
 49
 3. When the public interest is involved, that factor must be treated as "one of the traditional equitable criteria which a court should consider in granting injunctive relief." Chalk v. United States, 840 F.2d 701, 711 (9th Cir.1988).
 
 
 50
 4. Plaintiffs have established their probable success on the merits, based on this Court's finding that the plaintiffs' evidence is more credible than that of the defendants.
 
 
 51
 5. Plaintiffs have also established irreparable harm, based on this Court's finding that the deputies' actions have resulted in irreparable physical and emotional injuries to plaintiffs and the violation of plaintiffs' civil rights.
 
 
 52
 6. This Court has balanced the equities and found that the irreparable injury to plaintiffs that would result from the denial of a preliminary injunction far outweighs any possible injury that such relief could cause defendants.
 
 
 53
 7. The issuance of a preliminary injunction will serve the public interest in that it will prevent, or at least minimize the physical, emotional, and psychological harm being suffered by plaintiffs and the Lynwood community at the hands of Lynwood area deputies.
 
 
 54
 8. To the extent that any of these conclusions of law are deemed findings of fact, they are incorporated as findings of fact.
 
 
 55
 ORRICK, Senior District Judge, concurring in part and dissenting in part.
 
 
 56
 I concur with the majority's holding that appellants have standing to bring this action.
 
 
 57
 I respectfully dissent from the rest of the opinion.
 
 
 58
 The majority today holds that a district court, after making findings of fact based upon voluminous documentary evidence, has no power to enter a preliminary injunction[1] against a local law enforcement agency without holding a full-dress evidentiary hearing. This cannot be the law and, in my opinion, is not the law. The majority is only able to reach this surprising and flawed conclusion by ignoring the standard to be observed by this court in reviewing preliminary injunctions, and by blurring the distinction between preliminary and permanent injunctions.
 
 
 59
 The copious record submitted to the district court is replete with shocking allegations supported by declarations. As recited by the majority, plaintiffs brought forward evidence to show unlawful detentions and searches, beatings, shootings, terrorist activities, and destruction of property. More specifically, the declarations included evidence that black and hispanic men were repeatedly arrested without cause and severely beaten by deputies at the Lynwood station, the County jail, and the "Operations Safe Streets" trailer, using guns, flashlights, fists, clubs, boots, a brick wall, and an electric Taser gun to inflict injuries that often required medical treatment and left some victims hospitalized. The declarations recounted allegations of torture, such as deputies holding a gun to a suspect's head and threatening to shoot, or actually pulling the trigger without discharging a bullet, and allegations of illegal forced entry into residences, followed by a ransacking of the premises under the guise of a search.
 
 
 60
 The majority correctly measures this record by the standard set in Rizzo v. Goode, 423 U.S. 362, 375, 96 S.Ct. 598, 606, 46 L.Ed.2d 561 (1976), which overturned a permanent injunction against a municipal police department when plaintiffs failed to establish a causal connection between the alleged incidences of police brutality and a policy or plan of the defendant department, sufficient to show that the alleged "pervasive pattern of intimidation flowed from an intentional, concerted, and indeed conspiratorial effort to deprive the [victims] of their [constitutional] rights." Measured by that standard, the record in this case overwhelmingly supports a finding that plaintiffs will probably succeed at trial in proving a pervasive pattern of unlawful conduct. The finding of a causal connection is supported because (1) unlike in Rizzo, several of the deputies alleged to have participated in the misconduct are named defendants, and (2) there are allegations that senior officers in the department knew of the abuse and of the existence of a neo-Nazi, white supremacist gang composed of Lynwood station deputies. At a minimum, this record containing evidence showing a pervasive pattern of unlawful conduct rising to the level of a departmental policy justifies a preliminary injunction commanding the deputy sheriffs at the Lynwood station to follow their own rules and to submit monthly reports on complaints of the use of excessive force.
 
 
 61
 Instead, faced with this evidence, the majority reverses the district court's decision for failure to hold an evidentiary hearing and make "specific" factual findings because it finds "diametrically opposing declarations" in the record. In so doing, the majority has overstepped this court's power as a reviewing court.
 
 
 62
 Rule 52(a) of the Federal Rules of Civil Procedure provides that "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous." (Emphasis added.) The district court has made findings of fact, on which it based its legal conclusions leading to its preliminary injunction order. The majority reverses the district court because no "specific findings [were made] to support the district court's general conclusion" that there is a link between policy makers and the injuries suffered. This characterization of the district court's findings is misleading. The district court specifically found that plaintiffs who were charged with crimes after they were allegedly brutalized were charged "pursuant to an unwritten Sheriffs Department policy of charging a person injured in the course of a routine stop." Findings of Fact, p 4 (emphasis added). Further, the district court specifically found that "departmental policy makers" knew that Lynwood deputies were members of a neo-Nazi, white supremacist gang. Findings of Fact, p 7. The district court also specifically found that the evidence presented by "plaintiffs is more credible than that presented by the defendants." Findings of Fact, p 11. There is no basis for the majority to make a de novo review of the record and, because it is troubled by conflicting declarations, despite the fact that the district court specifically found plaintiffs' evidence to be more credible, to require an issue-by-issue resolution of each evidentiary conflict in the record.
 
 
 63
 Such a searching review is inappropriate under Rule 52(a) of the Federal Rules of Civil Procedure and is especially inappropriate when the court is reviewing a preliminary injunction. A preliminary injunction is just that--preliminary.
 
 
 64
 As Chief Judge Wallace points out in Zepeda v. United State Immigration & Naturalization Service, 753 F.2d 719, 724 (9th Cir.1983) (citations omitted) (emphasis added):
 
 
 65
 Review of [a preliminary injunction order] is much more limited than review of an order granting or denying a permanent injunction.... Review of factual findings at the preliminary injunction stage is, of course, nontestimonial record available to the district court when it granted or denied the injunction motion.
 
 
 66
 In Hunt v. National Broadcasting Co., 872 F.2d 289 (9th Cir.1989), this circuit reiterated the point made in Zepeda. The Hunt opinion noted "the nonintrusive nature of our review of the preliminary injunction order" and discouraged appeals of future preliminary injunction orders by its speculation about whether such appeals represent " 'an efficient use of limited judicial facilities.' " Id. at 293 (quoting Zepeda, 753 F.2d at 724). Keeping in mind that this is a preliminary injunction, this court must review these specific findings under the clearly erroneous standard.
 
 
 67
 The district court's findings of fact, though conclusory, are "plausible in light of the record viewed as a whole," even though necessarily "based on physical or documentary evidence" and "inferences from other facts." Anderson v. Bessemer City, 470 U.S. 564, 574, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985). The efforts of both sets of defendants to convince this court that a mistake has been committed are tantamount to urging this court to "weigh[ ] the evidence differently" than did the district court. Bessemer, 470 U.S. at 574, 105 S.Ct. at 1511 (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). Under Bessemer, this court is not empowered to do so. Given the evidence in the record to support these findings of fact, there is no basis for the holding of the majority, which does not commit itself to any standard of review that the findings are clearly erroneous.
 
 
 68
 The majority, apparently having failed to consider the admonition of Chief Judge Wallace in Zepeda regarding review of preliminary injunctions, or the clear statement of Rule 52(a) of the Federal Rules of Civil Procedure, instead, in essence, reviewed the findings of fact de novo, and, putting itself in place of the district judge, finds them wanting in "specificity." It thus reverses the preliminary injunction, and directs the district judge to conduct an evidentiary hearing and explicitly resolve the factual disputes in the record. Not only is this result a misapplication of the standard of review, but the majority has eliminated the distinction between a permanent and a preliminary injunction.
 
 
 69
 This circuit has already rejected a presumption in favor of evidentiary hearings before deciding preliminary injunction motions. International Molders' & Allied Workers' Local Union, No. 164 v. Nelson 799 F.2d 547, 555 (9th Cir.1986). Instead, this circuit has stated: "[A]n evidentiary hearing should not be held when the magnitude of the inquiry would make it impractical." Id. (emphasis added); see also United States v. Oregon, 913 F.2d 576, 582 (9th Cir.1990) (citing International Molders' and rejecting an evidentiary hearing before approving consent decree when facts are "complicated"). The paper record on which the district court based its findings of fact indicates that any evidentiary hearing would be of an impractical magnitude. The parties will have the opportunity for a full evidentiary hearing at trial before any permanent injunction will issue. To require a preliminary full-dress hearing before trial disserves the values this court sought to uphold in Zepeda, that is, judicial efficiency, discouraging appeals of preliminary injunctions, and swift response to preliminary injunction requests. 753 F.2d at 724.
 
 
 70
 As well as reviewing the findings of fact for clear error, this court must determine whether the district court's decision to grant a preliminary injunction based on those findings was an abuse of discretion. Hunt, 872 F.2d at 292. The district court abused its discretion if it failed to apply the correct legal standard, misapprehended underlying substantive law, or made clear error in judgment. Id. The district judge clearly applied the correct legal standard and understood the substantive law on which a court must base its discretionary decision to grant a preliminary injunction. The conclusions of law cite our opinions in Vision Sports, Inc. v. Melville Corp., 888 F.2d 609 (9th Cir.1989), and Chalk v. United States, 840 F.2d 701 (9th Cir.1988), setting out the well-established law of preliminary injunctions. Conclusions of Law, pp 2, 3. Recognizing that the moving party must show either a combination of probable success on the merits and the possibility of irreparable harm or serious questions requiring litigation and the balance of hardships tipped in its favor, Vision Sports, 888 F.2d at 612, the district judge specifically concluded that plaintiffs established probable success on the merits and irreparable harm. Conclusions of Law, pp 4, 5. He also balanced the hardships and found that the irreparable harm to plaintiffs, should the violations of departmental rules be allowed to continue, far exceeded any possible harm to defendants caused by requiring them to follow their own rules and, further, that the preliminary injunction would serve the public interest. Conclusions of Law, pp 6, 7. Applying the correct legal standard to his factual findings that plaintiffs' evidence is more credible than defendants' evidence and that the harm is current and on-going (Findings of Fact pp 10, 11), the district judge certainly did not make a clear error of judgment when he ordered the preliminary injunction.
 
 
 71
 The majority focuses on the substantive question of whether plaintiffs will be able to prove a causal connection between departmental policy and plaintiffs' injuries as required by Rizzo, and on the substantive scope of the preliminary injunction. The former concern is ill-founded and the latter does not necessitate reversal.
 
 
 72
 The majority's inquiry into the causal connection between departmental policy makers and plaintiffs' injuries is premature, except as it concerns plaintiffs' ability to meet the test for preliminary injunction, i.e., probable success on the merits or serious questions requiring litigation. This record contains declarations from a great number of plaintiffs, witnesses, and defendants, supporting the findings of racially motivated violations of civil rights and use of excessive force. The district court was entitled to draw the natural, unavoidable, inference that such renegade behavior as is alleged here could not take place without the approval of policy makers[2] and, therefore, that plaintiffs had shown probable success on the merits. In any event, as discussed above, to support the grant of a preliminary injunction, there need only be serious questions deserving of litigation and a tipping of the balance of hardships in favor of the moving party. The evidence of a link between departmental policy makers and plaintiffs' injuries creates such serious questions and, as also discussed above, the balance of hardships clearly tips in plaintiffs' favor.[3]
 
 
 73
 Again, I must reiterate that this appeal concerns a preliminary injunction, not a permanent injunction as at issue in Rizzo.[4] The majority's citation to Orantes-Hernandez v. Thornburgh, 919 F.2d 549 (9th Cir.1990), is inapplicable because that case involved a permanent injunction subject to much closer scrutiny. Here, without doubt, the balance of hardships tips sharply in favor of plaintiffs. Therefore, plaintiff need only demonstrate that there is a "serious question" as to this issue deserving of litigation. The findings of fact made below certainly meet that test.
 
 
 74
 The majority also justifies its reversal on the overly broad geographic and substantive scope of the injunction. At the urging of appellants, the district court expanded the geographic scope of the preliminary injunction to cover the entire Los Angeles County Sheriff's Department. This expansion was granted to accommodate the defendants. There is, however, no support for such a vast decree. I agree that the preliminary injunction should be limited to deputy sheriffs operating in the jurisdiction of Lynwood substation. Such a limitation can easily be placed on the injunction by way of our final order, however, without vacating the district court's preliminary injunction. I am not overly concerned by the administrative difficulties this creates for the Sheriff's Department. The preliminary injunction is limited to policies "regarding the use of force and procedures for conducting searches." I believe this limitation is crucial. In situations involving the use of force against, or searches of, citizens, rife as they are with the possibility of dangerous and violent confrontations between deputy sheriffs and the public, it should not be too much to ask that deputy sheriffs comply with department policies and regulations.
 
 
 75
 The original proposed order submitted by plaintiffs expanded upon defendants' normal policies and procedures in significant respects. Rather than interfere with established procedures and policies, the district court instead simply required defendants to comply with the policies already established regarding use of force and searches. This is not a burdensome preliminary injunction by any standard. Indeed, if defendant's arguments are to be believed, they are already in full compliance with these policies. The district court, however, did not specify precisely which policies and procedures defendants must comply with or face the contempt powers of a federal court. The majority concludes that the preliminary injunction violates the specificity requirement of Rule 65(d) of the Federal Rules of Civil Procedure.
 
 
 76
 I agree that the policies to be followed by defendants must be specified more particularly. Such minor amendments, however, do not require that the preliminary injunction be vacated. We should follow our precedent set in Davis v. City & County of San Francisco, 890 F.2d 1438, 1450-51 (9th Cir.1989), in which we approved an injunction incorporating San Francisco Fire Department's rules "already binding upon the officers of the SFFD," and by separate order required the district court to specify which policies it intended the defendants to follow. The Davis court noted that this circuit "has not taken a rigid approach to Rule 65(d)" and further explained that the "primary purpose of Rule 65(d) is to assure adequate notice to parties faced with the possibility of contempt." Id. at 1450. The Davis court specifically noted that "[i]t is unlikely the officers could argue they were unaware of these rules." Id. Likewise here, the sheriff's deputies cannot contend that they are unaware of their own policies on force and searches. Indeed, defendants boast that "sheriff's deputies are thoroughly and repeatedly trained with respect to proper escalation of force." Where the primary purpose of Rule 65(d) has been accomplished, vacating the preliminary injunction would cause undue delay and is unnecessary.
 
 
 77
 There is no doubt that a federal court should be cautious in granting an injunction against state law enforcement agencies. See Rizzo, 423 U.S. at 380, 96 S.Ct. at 608 (discussing federalism concerns). We should be unwilling to undertake such interference absent the most compelling circumstances. Hesitation is natural and proper in the face of such a request. In this case, however, plaintiffs have alleged the most compelling circumstances imaginable. Given the limited scope of our review of the district judge's decision, i.e., whether his findings of fact are clearly erroneous and whether his conclusions of law indicate an abuse if discretion, I do not believe that the preliminary injunction should be overturned. If plaintiffs are correct and there is a white supremacist cell operating with official knowledge out of the Lynwood sheriff's department, and these shootings, tortures, beatings, harassment, and slurs did in fact take place, then there can be no doubt that the preliminary injunction entered is fully justified. Defendants claim that these allegations are lies presented by disreputable gang members at war with authority, and gullibly reiterated by outside lawyers and the press. It is not the role of this tribunal to second guess a provisional determination as to this conflict made by the court below.
 
 
 78
 In my view, the preliminary injunction is proper and should stand, after modification on remand as described above. As noted in Zepeda, this ruling would not serve to indicate, in any way, the position this court would take after the development of a full record. 753 F.2d at 724.
 
 
 
 *
 Honorable William H. Orrick, Jr., Senior United States District Judge for the Northern District of California, sitting by designation
 
 
 [1]
 Appellants incorrectly contend that the notice of appeal, filed September 24, 1991, divested the district court of jurisdiction to file the written findings and conclusions. The findings and conclusions were entered in furtherance of the injunction order and they further our review of that order. See Hybritech Inc. v. Abbott Laboratories, 849 F.2d 1446, 1450 (Fed.Cir.1988). Appellants have also asked to supplement the record with documents related to the subsequent class certification. Since that certification order was entered independently from the preliminary injunction, we deny the motion
 
 
 [1]
 The injunction commands that the entire Los Angeles Sheriff's Department follow its own policies and guidelines regarding the use of force and conduct of searches and submit to the Court in camera copies of reports alleging the use of excessive force that the Department collects monthly
 
 
 [2]
 The district court specifically found that "there is a direct link between departmental policy makers, who tacitly authorized deputies' unconstitutional behavior, and the injuries suffered by the plaintiffs." Findings of Fact, p 9
 
 
 [3]
 There is simply no comparison between the beatings and harassment that may continue to be suffered by the plaintiffs and the "inconvenience" defendants will face in following policies that defendants themselves adopted and that they are already obliged to follow
 
 
 [4]
 While a preliminary injunction was entered by the district court in one of the cases comprising what became Rizzo, which injunction "restrain[ed] the police from violating the constitutional rights of citizens," Council of Organiza tions on Philadelphia Police Accountability v. Rizzo, 357 F.Supp. 1289, 1319 (E.D.Pa.1973), that preliminary injunction apparently was not the subject of further litigation