Lawrence ROSENBAUM; Eric Livingston, Plaintiffs— Appellants,

v.

CITY AND COUNTY OF SAN FRAN-CISCO; Fred Lau, in his official capacity as Chief of the San Francisco Police Department; Joel Robinson, in his official capacity as Superintendent of the Recreation and Parks Department, City and County of San Francisco; Anthony Delucchi, in his official capacity as Director of Property, Real Estate Department, City and County of San Francisco, Defendants—Appellees.

No. 00–15147.

D.C. No. CV–96–03409–CAL/BZ.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 14, 2001.

Decided April 19, 2001.

---

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Before REINHARDT, RYMER, and FISHER, Circuit Judges.

## MEMORANDUM *

The plaintiffs, who preach and play amplified music in San Francisco's public spaces, brought this action against various city officials to enjoin them from continuing to disrupt their "outdoor Christian rallies" through the unconstitutional application of the city's noise ordinances. The district court entered summary judgment for the defendants on the ground that, whether or not the plaintiffs' First and Fourteenth Amendment rights had been violated, they were not entitled to equitable relief. We reverse.

* This disposition is inappropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.

## I.

■ Two related procedural barriers must be surmounted before federal courts may grant injunctive relief. First, the plaintiffs must demonstrate that they have standing to bring the action, and second, they must demonstrate that equitable relief is appropriate because without it they will suffer irreparable injury. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 101–03, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); *Hodgers–Durgin v. De La Vina*, 199 F.3d 1037, 1042 (9th Cir.1999) (en banc).

■ Unlike in *Lyons*, where the plaintiff "was [not] likely to suffer future injury," 461 U.S. at 105, in this case, for purposes of our standing inquiry, we conclude that it is likely that the plaintiffs will continue to be subject to efforts by the police to silence them. The plaintiffs have applied for and received sound permits on more than 20 occasions each year. They have tendered evidence that in each of the last several years, the police have taken actions to stop their speech activities, such as citing and arresting them for violations of noise ordinances, and requiring them to turn their amplifier down. On the basis of this evidence, we are satisfied that plaintiffs have standing to seek equitable relief.

■ Furthermore, we conclude that, considering the evidence in the light most favorable to the non-moving parties and resolving all disputes of fact in their favor, the plaintiffs have made the showing of irreparable injury necessary to survive summary judgment on the question of their entitlement to injunctive relief. To show irreparable injury, a plaintiff must demonstrate that there is a "real or immediate threat that the plaintiff will be wronged again—a 'likelihood of substantial and immediate irreparable injury.'" *Lyons*, 461 U.S. at 111 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 502, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)).

■ When plaintiffs can demonstrate that police wrongdoing is part of a "policy, plan, or a pervasive pattern" of police action, then district courts may issue appropriate injunctions to prevent the misconduct from continuing. *Thomas v. County of Los Angeles*, 978 F.2d 504, 509 (9th Cir.1992). Viewing the evidence in the light most favorable to the plaintiffs and resolving all evidentiary disputes in their favor, they have made such a showing in this case. For example, plaintiffs submitted evidence showing that on February 22, 1997, Captain Martel of the San Francisco Police Department arrested plaintiff Livingston and allegedly told plaintiffs, "I'll be damned if you get another permit." During the following six months, the city denied all of the plaintiffs' applications for permits.[1] We conclude that, at the summary judgment stage, this as well as other evidence in the record (some of which is discussed below) suffices to raise a genuine issue of material fact as to whether there was a "policy, plan, or a pervasive pattern" of misconduct.

## II.

■ The district court also concluded that declaratory relief would be inappropriate on the ground that any such judgment would be "too vague, and potentially too broad given the nature and frequency of plaintiffs' anticipated future activities." We review a district court's decision to grant or deny declaratory relief under an abuse of discretion standard. *Government*

---

1. The city denied plaintiffs two permits on March 14, 1997, one permit on March 28, 1997, one permit on April 7, 1997, one permit on May 23, 1997 and one permit on June 19, 1997. On August 14, 1997, the City granted plaintiffs' application for a permit. It then denied plaintiffs a permit on September 16, 1997.

*Employees Ins. Co. v. Dizol,* 133 F.3d 1220, 1223 (9th Cir.1998).

■ When declaratory relief "will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties," it should be denied. *United States v. Washington,* 759 F.2d 1353, 1357 (9th Cir.1985). However, declaratory relief is appropriate when a "federal plaintiff demonstrates a genuine threat of enforcement of a disputed state criminal statute, whether an attack is made on the constitutionality of the statute on its face or as applied." *Steffel v. Thompson,* 415 U.S. 452, 475, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). We conclude that, at this early stage of the proceedings, the district court abused its discretion in concluding that it could not fashion declaratory relief that would be free of impermissible ambiguity. Because injunctive relief might be available, the district court should reconsider after further fact finding whether such relief would be warranted and feasible and, if so, whether declaratory relief would be preferable to an injunction. *See Stefel,* 415 U.S. at 466 (1974)("Congress plainly intended declaratory relief to act as an alternative to the strong medicine of the injunction.... [A]s Congress recognized in 1934, a declaratory judgment will have a less intrusive effect on the administration of state criminal laws.").

### III.

■ The plaintiffs claim that the city has violated their Fourteenth Amendment right to equal protection by enforcing its noise ordinances against them while not enforcing those ordinances against others who are similarly situated. To succeed on this claim, they must demonstrate that others who were similarly situated were not subjected to enforcement action. *See*

*United States v. Armstrong,* 517 U.S. 456, 465, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996).

■ The district court concluded that the plaintiffs did not put forward evidence of other similarly situated groups that were treated differently by the defendants. It concluded that all of the groups and events that plaintiffs compared themselves to were "large community, civic or holiday gatherings." We cannot agree. The record contains evidence that other small groups were allowed to engage in amplified speech activities in the same locations for which plaintiffs were denied permits, and that other small groups were violating the noise ordinances in the same manner as plaintiffs but were not cited or arrested. For example:

- The city denied the plaintiffs a permit for speech activities at the corner of Taylor and Jefferson on March 14, 1997 because "amplified sound generated by applicant and his group at 100 watt output in the densely populated area of Taylor and Jefferson Streets during hours applied will have a negative impact in the area." Plaintiff Rosenbaum, however, witnessed and videotaped a rock musician playing with a 140 watt amplifier at the same location on January 3, 1997, April 4, 1997, May 16, 1997, September 19, 1997, October 3, 1997 and November 21, 1997. The musician is alleged to have told Rosenbaum he plays music at that location three to four times a week without a permit and has never been shut down or cited by police.
- The city denied plaintiffs a permit for speech activities at the corner of Fourth and Market on March 16, 1997 because "Amplified sound, such as Mr. Rosenbaum has used previously, will disrupt the activities of individuals and businesses at this location. They do

not have alternatives which would allow them to continue their businesses." Plaintiff Rosenbaum, however, witnessed and videotaped a musical group called "Music from the Andes" playing with a large public address system at Fourth and Market on February 8, 1997, February 22, 1997, March 15, 1997, April 12, 1997, May 10, 1997 and June 11, 1998.

We conclude that, based upon this as well as other evidence in the record, there is a material fact in dispute as to whether plaintiffs were treated differently than similarly situated groups. After further fact finding, the district court will be able to determine whether there were similarly situated groups that were treated differently and, if so, whether the city had a permissible reason for doing so.

## IV.

■ Finally, the plaintiffs contend that the city's actions against them constitute impermissible viewpoint discrimination.[1] It is "axiomatic" that government may not regulate speech on the basis of the substantive viewpoint that it conveys. *Rosenberger v. Rector and Visitors of the Univ. of Virginia*, 515 U.S. 819, 828, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995).

■ As stated above, at this stage there is a material fact in dispute as to whether the city treats similarly situated groups differently than it treats plaintiffs. The plaintiffs have put forward evidence suggesting that this alleged difference in treatment is based upon the religious message that they espouse. The city has not addressed why similarly situated small groups were allegedly treated differently than plaintiffs; it only has suggested reasons why large, community, civic or holiday gatherings were treated differently. Because at this stage it is unclear whether the city's alleged difference in treatment is based upon the content of the plaintiffs' speech or upon other considerations, we conclude that summary judgment on the First Amendment issue is inappropriate.

■ Furthermore, the plaintiffs need not show actual intent to discriminate on the basis of viewpoint in order to prove a First Amendment violation. An ordinance that affords city officials unbridled discretion to determine whether or not to enforce limitations on First Amendment activity is deemed in violation on the same basis. *See City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 757, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988); *cf. American Jewish Cong. v. City of Beverly Hills*, 90 F.3d 379, 386 (9th Cir.1996). While, here, the city proffered a copy of its policy for issuing permits, which precludes consideration of the content of the permit-seeker's speech, the plaintiffs have asserted that the officers exercise unbridled discretion in enforcing the noise limitations (and the previously referred to evidence would support such an inference as well) and the city has submitted no evidence to the contrary. Because the record on this point is inadequately developed, summary judgment is not appropriate.

REVERSED AND REMANDED.

1. The plaintiffs frame the First Amendment issue both as viewpoint discrimination and as an application of a "heckler's veto." The "heckler's veto" occurs, they assert, because the police interrupt their outreaches only after receiving complaints from citizens about the content of their Christian messages. In fact, the plaintiffs' viewpoint discrimination and "heckler's veto" arguments actually raise the same issue. If the city is employing a "heckler's veto," then it is discriminating on the basis of viewpoint, because the hecklers' complaints to the police are alleged to be on the basis of viewpoint. Accordingly, we do not separately consider the plaintiffs' "heckler's veto" argument.

RYMER, Circuit Judge, dissenting.

I would affirm for reasons stated by the district court.